Israel Klein, Esq.
Brittany Weiner, Esq.
IMBESI LAW P.C.
450 Seventh Avenue, Suite 1408
New York, New York 10123
Tel. (646) 767-2265
Fax. (212) 658-9177
Israel@lawicm.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

JACOB STERN and BRACHA STERN, individually,
and on behalf of all others similarly situated,

                      **Plaintiffs,**

                  **v.**

THE CITY OF NEW YORK, COMMISSIONER
POLLY TROTTENBERG, COMMISSIONER
JACQUES JIHA, DEPUTY COMMISSIONER
JEFFREY SHEAR and COMMISSIONER JAMES
O'NEIL,

                      **Defendants.**

**Case No.: 1:17-cv-04973**

**AMENDED CLASS
ACTION COMPLAINT**

-----------------------------------------------------------------X

       Plaintiffs Jacob Stern ("Mr. Stern") and Bracha Stern ("Ms. Stern") (collectively,

"Plaintiffs"), by and through their attorneys, Imbesi Law P.C., bring this putative class action on

behalf of themselves and all other similarly situated persons (collectively, "Class") against

Defendants the City of New York ("NYC"), Commissioner Polly Trottenberg ("Commissioner

Trottenberg"), Commissioner Jacques Jiha ("Commissioner Jiha"), Deputy Commissioner

Jeffrey Shear ("Deputy Commissioner Shear") and Commissioner James O'Neil

("Commissioner O'Neil") (collectively, "Defendants"), and allege, with personal knowledge as

to their own actions and upon information and belief as to those of others, as follows:

## NATURE OF THE ACTION

       1.     Plaintiffs bring this putative class action against Defendants seeking damages

sustained as a direct and proximate result of Defendants' violations of 42 U.S.C. § 1983, the Fourteenth Amendment of the United States Constitution, Article 1, Section 6, of the New York State Constitution, fraudulent concealment and/or inducement, negligent misrepresentation and unjust enrichment in connection with Defendants' practice of routinely issuing and collecting fines for violations that did not exist and which Plaintiffs and Class members did not commit. Plaintiffs and putative Class members have been, and continue to be, injured by Defendants' actions.

2.      Plaintiffs are two (2) of thousands of individuals who were issued and paid for Notices of Violation alleging violations of Title 34, Chapter 4, Section 4-08(h), of the Rules of the City of New York ("Muni Meter Rules") that did not exist and which they did not commit.

3.      Defendants have known, or should have known, that Section 4-08(h)(10) of the Muni Meter Rules was repealed on April 20, 2017. Nevertheless, Defendants continued to issue Notices of Violation for alleged violations of Section 4-08(h)(10), causing Plaintiffs and Class members to pay fines and associated fees for violations that did not exist and which they did not commit.

4.      Without correcting their material misrepresentations or omissions by informing Plaintiffs and Class members that Section 4-08(h)(10) was repealed, Defendants accepted payment from Plaintiffs and Class members for alleged violations of Section 4-08(h)(10).

5.      With notice and knowledge of their material misrepresentations or omissions, Defendants failed to offer Plaintiffs and Class members full refunds, plus interest, of the fines and/or associated fees paid for alleged violations of Section 4-08(h)(10) of the Muni Meter Rules.

6.      With notice and knowledge of their material misrepresentations or omissions, Defendants failed to timely dismiss Plaintiffs' and Class members' Notices of Violation, *sua*

*sponte*, for failing to allege a valid violation of the Muni Meter Rules.

7.      With notice and knowledge of their material misrepresentations or omissions, Defendants failed to timely instruct New York City police officers to stop issuing incorrect Notices of Violation.

8.      As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiffs and members of the putative Class have sustained economic injury by paying fines and/or associated fees for violations that did not exist and which they did not commit.

9.      Plaintiffs seek damages and equitable remedies under statutory and common law claims for themselves and members of the putative Class, of which Plaintiffs are members. Identified definitively below, the putative Class includes individuals who from April 20, 2017, to the present received a Notice of Violation for allegedly violating Section 4-08(h)(10) of the Muni Meter Rules and paid a fine and/or associated fee that was not fully refunded by Defendants with interest.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiffs seek redress for the deprivation of their rights in violation of the Constitution and laws of the United States.

11.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are so closely related to the federal claims that they form part of the same case or controversy.

12.     Plaintiffs' claims for declaratory and injunctive relief are authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because (i) a substantial amount of the acts and transactions giving rise to this action occurred in this District;

(ii) Defendants are authorized to operate and exercise governmental authority in this District and have intentionally availed themselves of the laws within this District and (iii) Defendants currently operate and exercise governmental authority in this District.

14. On July 10, 2017, prior to commencing the within action, Plaintiff Jacob Stern, individually and on behalf of all others similarly situated, timely filed and served a Verified Notice of Claim against Defendant NYC. More than thirty (30) days have elapsed since Plaintiff Jacob Stern timely filed and served a Verified Notice of Claim against Defendant NYC.

## PARTIES

15. Plaintiff Jacob Stern is a citizen of the State of New York and a resident of Kings County. Plaintiff Jacob Stern holds a valid New York State driver's license and is authorized to and does operate a motor vehicle in this District and throughout the State of New York.

16. Plaintiff Bracha Stern is a citizen of the State of New York and a resident of Kings County. Plaintiff Bracha Stern holds a valid New York State driver's license and is authorized to and does operate a motor vehicle in this District and throughout the State of New York. Plaintiff Bracha Stern is the wife of Plaintiff Jacob Stern.

17. Defendant NYC is a municipal corporation duly organized and existing under the laws of the State of New York, exercising governmental authority. Defendant NYC is a person for purposes of 42 U.S.C. § 1983. At all relevant times to this action, Defendant NYC exercised governmental authority in this District.

18. Defendant Commissioner Trottenberg is, and at all relevant times was, the commissioner of the New York City Department of Transportation ("DOT"). The DOT is a local government agency, bureau, department and/or subdivision of Defendant NYC, exercising governmental authority. The DOT and Defendant Commissioner Trottenberg are responsible for much of Defendant NYC's transportation infrastructure.

19.     Defendant Commissioner Jiha is, and at all relevant times was, the commissioner of the New York City Department of Finance ("DOF"). The DOF is a local government agency, bureau, department and/or subdivision of Defendant NYC, exercising governmental authority. The DOF is the revenue service, taxation agency and recorder of deeds of Defendant NYC.

20.     Defendant Deputy Commissioner Shear is, and at all relevant times was, the deputy commissioner of treasury and payment services for the DOF.

21.     Defendant Commissioner O'Neil is, and at all relevant times was, the commissioner of the New York City Police Department ("NYPD"). The NYPD is a local government agency, bureau, department and/or subdivision of Defendant NYC, exercising governmental authority. The NYPD and Defendant Commissioner O'Neil are primarily responsible for law enforcement and investigation within the five (5) boroughs of Defendant NYC.

## STATEMENT OF FACTS

### I. New York City's Muni Meter Parking System

22.     Defendant NYC utilizes a centralized Muni Meter parking system to regulate and enforce approximately 85,000 paid public on-street parking spaces.[1] Drivers may purchase parking time from Muni Meters located adjacent to these parking spaces.

23.     To purchase on-street parking from a Muni Meter, drivers must select the length of time they wish to park their vehicle and pay the associated fee by depositing coins or inserting a credit, debit or prepaid parking card. The Muni Meter then dispenses a time-stamped receipt indicating the length of parking time purchased. Drivers must display this receipt on their vehicle's dashboard.

---

[1] New York City Comptroller, *New York City Fine Revenues Update* (May 3, 2017), available at https://comptroller.nyc.gov/reports/new-york-city-fine-revenues-update/ (last visited January 31, 2018).

## II. **Enforcement of New York City's Muni Meter Parking System**

24.     The laws and regulations governing Defendant NYC's paid public on-street parking spaces are set forth in the Muni Meter Rules. These Rules are promulgated by the DOT and Defendant Commissioner Trottenberg.

25.     Compliance with the Muni Meter Rules is enforced by the NYPD and Defendant Commissioner O'Neil. The NYPD issues Notices of Violations, commonly referred to as parking tickets, to individuals accused of violating the Muni Meter Rules. The NYPD utilizes handheld printing devices to scan a vehicle's registration and issue a Notice of Violation. The handheld printing device is pre-programmed with the violations contained in the Muni Meter Rules and their corresponding statutes. Once a New York City police officer selects an applicable violation, the corresponding statute automatically populates the Notice of Violation.

26.     The DOF and Defendants Commissioner Jiha and Deputy Commissioner Shear are responsible for adjudicating all Muni Meter Rule Notices of Violation and collecting and processing payment of all fines. The recipient of a Notice of Violation may plead guilty to the alleged violation and pay the prescribed fine to the DOF by mail, through the DOF's website, in person at a finance business center or 7-Eleven store or through the "New York City Parking Ticket Pay or Dispute" mobile app.[2] Individuals electing to pay the prescribed fine with a credit or debit card are charged a 2.49% processing fee.[3] Individuals electing to pay the prescribed fine in person at a 7-Eleven store are charged a $2.99 convenience fee.[4] Individuals electing to pay the prescribed fine by mail must affix postage.

27.     The recipient of a Notice of Violation may plead not guilty to the alleged

---

[2] City of New York, *Pay a Parking Ticket*, available at http://www1.nyc.gov/nyc-resources/service/2195/pay-a-parking-ticket (last visited January 31, 2018).
[3] *Id.*
[4] *Id.*

violation and request a hearing in person, by mail or through the DOF's website. The Notice of Violation is then adjudicated by an administrative law judge within the DOF's Parking Violations Bureau ("PVB"). If found guilty, an individual can appeal the administrative law judge's decision to the PVB's appeals unit.

### III. Civil Penalties for Violations of New York City's Muni Meter Rules

28.     Defendant NYC issues approximately 9 million to 11 million parking tickets each year for violations of the Muni Meter Rules.[5] A violation of the Muni Meter Rules subjects a driver to a civil penalty of approximately thirty-five dollars ($35).

29.     In 2016, Defendants collected $565 million in fines for parking violations.[6] Parking violations represent Defendant NYC's largest revenue source and sharpest increase of fine revenue, rising six percent (6%) from $513 million in 2012.[7]



---

[5] New York City Comptroller, *New York City Fine Revenues Update* (May 3, 2017), available at https://comptroller.nyc.gov/reports/new-york-city-fine-revenues-update/ (last visited January 31, 2018).
[6] *Id.*
[7] *Id.*

## IV. New York City's April 20, 2017, Amendment of the Muni Meter Rules

30.     Prior to April 20, 2017, Section 4-08(h)(10) of the Muni Meter Rules set forth:

> **(10) "Muni-Meters."**
> **(i)** No person shall, in any parking space controlled by a "Muni-Meter," park a vehicle without first purchasing the amount of parking time desired from such machine.
> **(ii)** No person shall, in any parking space controlled by a "Muni-Meter," park a vehicle without displaying a payment receipt in the windshield, where such requirement is indicated by posted signs.
> **(iii)** No person shall, in any parking space controlled by a "Muni-Meter," which allows a person to purchase the amount of parking time desired from a machine that dispenses a receipt or tag to be displayed in the windshield, park a vehicle in excess of the amount of time indicated on such receipt or tag, or on posted signs.

31.     On April 20, 2017, the DOT amended the Muni Meter Rules, striking Section 4-08(h)(10) in its entirety.[8] The DOT replaced Section 4-08(h)(1) with new language reflecting the relevant provisions of former Section 4-08(h)(10).[9] Section 4-08(h)(1) now provides:

> **(1) Purchasing of parking time.** No person shall park a vehicle, whether attended or not, in any parking space controlled by a parking meter:
> **(i)** Without first purchasing the amount of parking time desired from a parking meter, or from a valid electronic communication device as described in this section. This provision shall not apply to the time necessary to park the vehicle or activate the parking meter or any other authorized grace period.
> **(ii)** Without displaying a payment receipt on the vehicle's dashboard or in a visible and secure place on a motorcycle, where such requirement is indicated by posted signs, unless such parking time was purchased through an authorized electronic communication device as described in this section.
> **(iii)** In excess of the amount of time indicated on the payment receipt, electronic communication device, or on posted signs.[10]

32.     As of April 20, 2017, the DOT's website only provides a copy of the amended

---

[8] New York City Department of Transportation, *Notice of Public Hearing and Opportunity to Comment on Proposed Rules* (Dec. 1, 2016), available at http://www.nyc.gov/html/dot/downloads/pdf/notice-of-public-hearing-01-31-2017.pdf (last visited January 31, 2018).

[9] *Id.*

[10] New York City Department of Transportation, *Traffic Rules* (Oct. 11, 2017), available at http://www.nyc.gov/html/dot/downloads/pdf/trafrule.pdf (last visited January 31, 2018).

Muni Meter Rules.[11] Individuals are unable to view the former Muni Meter Rules to read the language of repealed Section 4-08(h)(10).

### V. **Plaintiffs Incur Civil Penalties and Associated Fees for Allegedly Violating Repealed Section 4-08(h)(10) of the Muni Meter Rules**

#### a. **Plaintiffs' Notice of Violation for an Expired Muni Meter Receipt**

33.     On April 26, 2017, Plaintiff Jacob Stern was operating a vehicle registered to his wife, Plaintiff Bracha Stern. Plaintiff Jacob Stern parked the vehicle in a Defendant NYC paid public on-street parking space. Plaintiff Jacob Stern purchased parking time from the Muni Meter located adjacent to his parking space and displayed the time-stamped Muni Meter receipt on the vehicle's dashboard.

34.     At approximately 12:38 p.m., a New York City police officer allegedly observed that the allotted parking time on Plaintiff Jacob Stern's Muni Meter receipt had expired, in violation of Section 4-08(h)(1) of the Muni Meter Rules.

35.     The police officer utilized his handheld printing device to scan the vehicle's registration and issue a Notice of Violation. The police officer's handheld printing device was not updated on April 20, 2017, and was pre-programmed with violations of the outdated Muni Meter Rules and their incorrect corresponding statutes.

36.     When the police officer selected the applicable violation of the outdated Muni Meter Rules from his handheld printing device, the device automatically populated the Notice of Violation with repealed Section 4-08(h)(10) instead of amended Section 4-08(h)(1).

37.     Plaintiff Jacob Stern subsequently returned to the vehicle and discovered the Notice of Violation for allegedly failing to display a valid Muni Meter receipt on the vehicle's dashboard. The Notice of Violation incorrectly alleged that Plaintiff Bracha Stern, the registered

---

[11] New York City Department of Transportation, *Highway and Traffic Rules*, available at http://www.nyc.gov/html/dot/html/motorist/traffic_rules.shtml (last visited January 31, 2018).

owner of the vehicle, had violated repealed Section 4-08(h)(10) of the Muni Meter Rules.



38.     On or about June 22, 2017, Plaintiff Jacob Stern paid the assessed thirty-five

dollar ($35) fine and ten dollar ($10) late fee for the alleged violation of Section 4-08(h)(10) of

the Muni Meter Rules to the DOF through the DOF's website. Plaintiff Jacob Stern incurred a

2.49% processing fee for remitting payment with a credit card.

**b.** **Plaintiffs' Notice of Violation for Failing to Display a Muni Meter Receipt**

39.     On May 5, 2017, Plaintiff Jacob Stern was operating a vehicle registered to his wife, Plaintiff Bracha Stern. Plaintiff Jacob Stern parked the vehicle in a Defendant NYC paid public on-street parking space. At approximately 2:55 p.m., a New York City police officer allegedly observed that the vehicle's dashboard did not properly display a valid Muni Meter receipt, in violation of Section 4-08(h)(1) of the Muni Meter Rules.

40.     The police officer utilized his handheld printing device to scan the vehicle's registration and issue a Notice of Violation. The police officer's handheld printing device was not updated on April 20, 2017, and was pre-programmed with violations of the outdated Muni Meter Rules and their incorrect corresponding statutes.

41.     When the police officer selected the applicable violation of the outdated Muni Meter Rules from his handheld printing device, the device automatically populated the Notice of Violation with repealed Section 4-08(h)(10) instead of amended Section 4-08(h)(1).

42.     Plaintiff Jacob Stern subsequently returned to the vehicle and discovered the Notice of Violation for allegedly failing to properly display a valid Muni Meter receipt. The notice of Violation incorrectly alleged that Plaintiff Bracha Stern, the registered owner of the vehicle, had violated repealed Section 4-08(h)(10) of the Muni Meter Rules.

**The City of New York**
**Notice of Parking Violation**

YOU MUST ANSWER WITHIN 30 DAYS OF THE DATE OF THIS TICKET.
IF YOU DO NOT RESPOND, PENALTIES AND INTEREST WILL BE
ADDED AND YOUR VEHICLE MAY BE BOOTED OR TOWED.

N?[Hilot Shoer
N/Artilot Areknato

| Permit Displayed | Permit Number | Type |
|---|---|---|
| N/S | N/A | N/A |

Name of the Operator, if present. If not present:
OWNER OF THE VEHICLE BEARING LICENSE

| Plate | CD | Exp. Date | State | Plate Type |
|---|---|---|---|---|
| ■ | 1 | ■ | NY | PAS |

| Make | Color | Year | Body Type |
|---|---|---|---|
| ■ | ■ | ■ | 4DSD |

VIN # ■

THE OPERATOR AND OWNER OF THE ABOVE VEHICLE ARE CHARGED AS FOLLOWS:

In Violation of NYC Traffic Rules, Section: 4-08(h)(10)(II)

Failure to Dsply Muni Rec
DAYS/HRS: EXCEPT Su/ 9 A- 7 P

Place of Occurrence

| VC | Meter # | Operational | Limit | County | Pct. |
|---|---|---|---|---|---|
| 38 | | | | K | 063 |

| Date/Time of Offense | Date/Time 1st Observed |
|---|---|
| 05/05/17  02:55 PM | N/A |

Complainant's Comments:

Receipt is Face Down On Dash

**FINE AMOUNT:**  **$ 35.00**

| Agency | Command | Tax Reg # |
|---|---|---|
| TRAFFIC | T-302 | 364879 |

Complainant's Name

RAO, H.

Signature of Complainant

I affirm under penalty of perjury (Penal Law 210.45) that I personally observed the offense charged above; if
the operator was present I indicated the operator's name or indicated "ID Refused" and personally served
this Notice upon him/her; if the operator was not present or refused to accept personal service of this Notice,
I affixed this Notice to the vehicle.

X  *H Rao*

43.     On or about June 22, 2017, Plaintiff Jacob Stern paid the assessed thirty-five

dollar ($35) fine and ten dollar ($10) late fee for the alleged violation of Section 4-08(h)(10) of

the Muni Meter Rules to the DOF through the DOF's website. Plaintiff Jacob Stern incurred a

2.49% processing fee for remitting payment with a credit card.

## VI. Defendants Fail to Issue Plaintiffs and Class Members Full Refunds of the Civil Penalties and/or Associated Fees Incurred for Alleged Violations of Section 4-08(h)(10) of the Muni Meter Rules

44.     On July 10, 2017, Plaintiff Jacob Stern, individually and on behalf of all others similarly situated, filed and served a Verified Notice of Claim against Defendant NYC for their deceptive acts and practices of issuing and collecting fines for alleged violations of Section 4-08(h)(10) of the Muni Meter Rules with knowledge that Section 4-08(h)(10) was previously repealed.

45.     On August 23, 2017, Plaintiff Jacob Stern filed his initial class action Complaint against Defendant NYC and other defendants for their deceptive acts and practices of issuing and collecting fines for alleged violations of Section 4-08(h)(10) of the Muni Meter Rules with knowledge that Section 4-08(h)(10) was previously repealed.

46.     As a result of Plaintiff Jacob Stern's Complaint, the DOF refunded or dismissed approximately 507,668 invalid Muni Meter tickets, totaling approximately $26 million.[12]

47.     The DOF issued limited refunds to Plaintiffs and some Class members for the underlying statutory fines and applicable late fees paid for alleged violations of 4-08(h)(10) of the Muni Meter Rules.

48.     The DOF failed to issue refunds of the underlying statutory fines and applicable late fees to Class members with one (1) or more outstanding parking ticket judgement.

49.     The DOF failed to issue refunds to Plaintiffs and Class members for any associated fees that they incurred, including but not limited to the 2.49% processing fee for remitting payment using a credit or debit card, the $2.99 convenience fee for remitting payment in person at a 7-Eleven store or the cost of postage for remitting payment via mail.

---

[12] CBS New York, *1010 WINS Exclusive: Parking Ticket Blunder Costs NYC $26 Million* (Nov. 13, 2017), available at http://newyork.cbslocal.com/2017/11/13/violation-code-parking-tickets-dismissed/ (last visited January 31, 2018).

50.     The DOF failed to pay interest to Plaintiffs and Class members for unlawfully
depriving them of their property.



**NEW YORK CITY
DEPARTMENT OF FINANCE
PARKING VIOLATIONS OPERATIONS**

Property and Parking Refunds Unit - 59 Maiden Lane, 20th Floor, New York, N.Y. 10038

**NOTICE OF REFUND**

11/02/17



Dear Sir or Madam:

We are writing to inform you that due to a change in the New York
City Traffic Rules, the summons(es) issued to your vehicle(s) for
either failing to display a parking meter receipt or displaying
an expired parking meter receipt while parked in a parking meter
zone contained an error and will be administratively dismissed.

We are crediting your account for the paid summons(es) listed
below. If you have no outstanding parking ticket judgments, a
refund check for the amount you paid will be sent to you under
separate cover. If you do have one or more outstanding parking
ticket judgments, a credit has been applied to the amount you
owe, and any remaining refund amount will be issued to you by
check.

If you have questions regarding this matter or anything else
related to parking tickets, please contact us by calling 311 or
visiting nyc.gov/parkingticketquestions.

Sincerely,

The New York City Department of Finance

| Summons Number | Issue Date | Amount Paid | Amount Applied | Refund Amount |
|---|---|---|---|---|
| ██████ | 08/01/17 | 35.00 | 0.00 | 35.00 |

## VII.    Plaintiffs and Class Members are Entitled to Full Refunds of the Civil Penalties and Associated Fees Incurred for Alleged Violations of Section 4-08(h)(10) of the Muni Meter Rules

51.     At the time Plaintiffs and Class members paid the assessed fines and associated
fees for their alleged violations, Defendants represented that Section 4-08(h)(10) of the Muni
Meter Rules was not repealed and that failing to properly display a valid Muni Meter receipt on a

vehicle's dashboard was a violation of Section 4-08(h)(10).

52. Plaintiffs and Class members paid the assessed fine and associated fees for their alleged violations of Section 4-08(h)(10) of the Muni Meter Rules out of fear of incurring late fees and/or other penalties for failing to remit payment for their alleged violations.

53. At all relevant times, Defendants were aware that the NYPD's handheld printing devices were pre-programmed with violations of the outdated Muni Meter Rules and their incorrect corresponding statutes. Defendants failed to timely update the devices with the correct violation statutes or instruct the NYPD to stop issuing incorrect Notices of Violation. Rather, Defendants allowed the NYPD to continue issuing incorrect Notices of Violation.

54. Defendants did not update the NYPD's hand-held printing devices with the correct violation statutes or instruct the NYPD to stop issuing incorrect Notices of Violation until Plaintiff Jacob Stern uncovered their deceptive practices and notified the Defendants and the public.

55. At all relevant times, Defendants were aware that Plaintiffs' and Class members' Notices of Violation incorrectly alleged that they violated repealed Section 4-08(h)(10). Defendants failed to timely notify Plaintiffs and Class members that the Notices of Violation failed to allege a valid violation of the Muni Meter Rules. Defendants failed to timely dismiss Plaintiffs' and Class members' Notices of Violation, *sua sponte*, for failing to allege a valid violation of the Muni Meter Rules.

56. Defendants did not notify Plaintiffs and Class members of the invalid Notices of Violation or dismiss them, *sua sponte*, until Plaintiff Jacob Stern uncovered their deceptive practices and notified the Defendants and the public.

57. Defendants knowingly accepted Plaintiffs' and Class members' payments for alleged violations of repealed Section 4-08(h)(10). Defendants failed to issue Plaintiffs and Class

members full refunds, plus interest, of the civil penalties and/or associated fees paid for the invalid violations.

58. Defendants did not issue limited refunds to Plaintiffs and some Class members for the civil penalties paid for the invalid violations until Plaintiff Jacob Stern uncovered their deceptive practices and notified the Defendants and the public.

59. Defendants engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading, and with the intent that Plaintiffs and Class members rely upon such concealment, suppression and omissions.

60. Alternatively, Defendants were reckless in not knowing that these representations were false and misleading at the time they were made. Defendants had access to data and information concerning the accuracy of the NYPD's pre-programmed handheld printing devices and issued Notices of Violation pertaining to Section 4-08(h)(10) that Plaintiffs and Class members could not review.

61. Plaintiffs and Class members reasonably relied upon Defendants' omissions and misrepresentations. As a direct and proximate result of Defendants' actions, Plaintiffs and Class members have sustained economic injury by paying fines and/or associated fees for violations that did not exist and which they did not commit.

62. Plaintiffs and Class members are entitled to full refunds, plus interest, of the civil penalties and associated fees paid for alleged violations of Section 4-08(h)(10) of the Muni Meter Rules even in the event that they violated Section 4-08(h)(1). At the time of payment, Defendants failed to notify Plaintiffs and Class members that they were accused of violating Section 4-08(h)(1) of the Muni Meter Rules. Nor was a copy of the outdated Muni Meter Rules available on the DOT's website to allow Plaintiffs and Class members to read the language of repealed Section 4-08(h)(10).

63.     Defendants' collection of civil penalties without providing Plaintiffs and Class members with notice of the correct statute they were accused of violating, Section 4-08(h)(1), deprived them of their property without due process, as guaranteed under the Constitution and laws of the United States and State of New York. Plaintiffs and Class members were further deprived of due process when they incurred additional fees associated with the invalid violations.

## VIII.    Punitive Damages are Necessary to Curtail Defendants' Repeated Pattern of Deceptive Practices

64.     Commenting on the DOF's approximate $26 million refund of invalid Muni Meter tickets following Plaintiff Jacob Stern's initial Complaint, New York City Comptroller Scott Stringer acknowledged that "the mistake is unacceptable and [] the Department of Finance has to get its act together."[13]

65.     Defendants have repeatedly engaged in a similar pattern of deceptive practices.

66.     According to Defendant Deputy Commissioner Shear, the approximate $26 million refund of invalid Muni Meter tickets was the third time in 2017 that the DOF issued big ticket refunds.[14]

67.     Similarly, in or about May of 2016, the NYPD admitted to issuing invalid tickets for parking in front of mid-block curb-cuts (graded ramps that slope from the sidewalk to the road) even though it had been legal since 2009.[15]

68.     In or about May of 2016, Defendants promised to refund approximately $4 million for the invalid curb-cut tickets.[16] However, as of May 2017, Defendants only issued two

---

[13] FOX 5, *Parking Ticket Goof Forces NYC to Refund Millions* (Nov. 14, 2017), available at http://www.fox5ny.com/news/nyc-parking-ticket-refund (last visited January 31, 2018).
[14] CBS New York, *1010 WINS Exclusive: Parking Ticket Blunder Costs NYC $26 Million* (Nov. 13, 2017), available at http://newyork.cbslocal.com/2017/11/13/violation-code-parking-tickets-dismissed/ (last visited January 31, 2018).
[15] New York Post, *City Fails on Promise to Refund $4M in Parking Tickets* (April 18, 2017), available at https://nypost.com/2017/04/18/city-fails-on-promise-to-refund-4m-in-parking-tickets/ (last visited January 31, 2018).
[16] *Id.*

(2) refunds totaling $360.[17]

# CLASS ALLEGATIONS

69.     Plaintiffs repeat and reallege every allegation above as if set forth herein in full.

70.     Plaintiffs bring this action on their own behalf and on behalf of the following

Classes pursuant to Fed. R. Civ. P. 23(a), 23(b) (2) and/or 23(b) (3):

> **National Class:** All persons in the United States who from April 20, 2017, to the present received a Notice of Violation for allegedly violating Section 4-08(h)(10) of the Muni Meter Rules and paid a fine and/or associated fee that was not fully refunded by Defendants with interest.

> **New York Subclass:** All persons in New York who from April 20, 2017, to the present received a Notice of Violation for allegedly violating Section 4-08(h)(10) of the Muni Meter Rules and paid a fine and/or associated fee that was not fully refunded by Defendants with interest.

71.     Excluded from the Class are Defendants, their governing agencies, subsidiaries,

affiliates, employees, officers and directors; any co-conspirators; federal governmental entities

and instrumentalities of the federal government; states and their subdivisions, agencies and

instrumentalities; any judicial officer presiding over this matter and the members of their

immediate families and judicial staff; and Class counsel.

72.     Plaintiffs reserve the right to amend or modify the Class definitions in connection

with a motion for Class certification or as warranted by discovery.

73.     This action has been brought and may properly be maintained on behalf of the

Class proposed herein under the criteria set forth in Federal Rule of Civil Procedure 23.

74.      Plaintiffs do not know the exact size of the proposed Class; however, Plaintiffs

believe that the Class encompasses thousands of individuals who are dispersed throughout the

United States and the State of New York. Therefore, the proposed Class is so numerous that

joinder of all members is impracticable.

---

[17] *Id.*

75.     The identity and address of each Class member can be readily ascertained through mass advertisement and should be in the possession of Defendants as they maintain parking ticket records. Class members may be notified of the pendency of this action by mail and/or electronic mail and/or other electronic and social media means.

76.     There are questions of law and fact that are common to the Class and predominate over any questions affecting only individual members of the Class. The damages sustained by Plaintiffs and Class members arise from the common nucleus of operative facts surrounding Defendants' misconduct. The common questions include, but are not limited to:

a.  whether Section 4-08(h)(10) of the Muni Meter Rules was repealed on April 20, 2017, and whether failing to properly display a valid Muni Meter receipt on a vehicle's dashboard was a violation of Section 4-08(h)(10) on or after April 20, 2017;

b.  whether Defendants represented that Section 4-08(h)(10) of the Muni Meter Rules was not repealed and that failing to properly display a valid Muni Meter receipt on a vehicle's dashboard on or after April 20, 2017, was a violation of Section 4-08(h)(10);

c.  whether Defendants routinely issued and collected fines for Notices of Violation alleging violations that did not exist and for which Plaintiffs and Class members did not commit;

d.  whether Defendants engaged in these statements, omissions and concealments with knowledge that the representations were false and/or misleading, and with the intent that Plaintiffs and Class members rely upon such concealment, suppression and omissions;

e.  whether Defendants deprived Plaintiffs and Class members of their property without due process by failing to provide them with notice of the correct statute they were accused of violating, Section 4-08(h)(1) of the Muni Meter Rules;

f.  whether Defendants' conduct constituted a violation of 42 U.S.C. § 1983;

g.  whether Defendants' conduct constituted a violation of the Fourteenth Amendment of the United States Constitution;

h.  whether Defendants' conduct constituted a violation of Article 1, Section 6, of the New York State Constitution;

i.  whether Defendants were unjustly enriched by collecting fines for violations that did not exist and which Plaintiffs and Class members did not commit;

j. whether, as a result of Defendants' omissions and/or misrepresentations of material facts, Plaintiffs and members of the Class have suffered an ascertainable loss of monies and/or property and/or value; and

k. whether Plaintiffs and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief.

77. Plaintiffs' claims are typical of the claims of the Class since each Class member was subject to the same deceptive practices and course of conduct. Furthermore, Plaintiffs and all members of the Class sustained monetary damages including, but not limited to, ascertainable loss arising out of Defendants' wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

78. Plaintiffs are committed to the vigorous prosecution of the Class' claims. Plaintiffs will fairly and adequately represent the interests of the Class. No conflict of interest exists between the representatives and the Class members or with respect to the claims for relief requested.

79. The representatives and their chosen attorneys are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this complaint so as to be able to assist in its prosecution. The representatives' attorneys are competent in the relevant areas of the law, have sufficient experience to vigorously represent the Class and have the resources to ensure that this litigation will not be hampered by a lack of financial capacity.

80. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages suffered by each individual Class member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. Further, it would be virtually impossible for the members of the Class to individually and effectively redress the wrongs done to them. A class action regarding the issues in this case does not create any problems of manageability. The class action

device presents far fewer management difficulties than alternative methods of adjudication, and provides the benefit of single adjudication, economy of scale and comprehensive supervision by a single court.

81. The Class may also be certified because:

 a. the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendants;

 b. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications or substantially impair or impede the ability to protect their interests; and

 c. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## COUNT I
## DEPRIVATION OF RIGHTS IN VIOLATION OF 42 U.S.C. § 1983

82. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

83. Defendants are persons within the meaning of 42 U.S.C. § 1983.

84. Plaintiffs and Class members are citizens of the United States.

85. Defendants issued Notices of Violation to Plaintiffs and Class members alleging violations of the Muni Meter Rules that did not exist and which they did not commit.

86. Defendants collected payment of fines from Plaintiffs and Class members for violations of the Muni Meter Rules that did not exist and which they did not commit.

87. Defendants caused Plaintiffs and Class members to incur associated fees for violations of the Muni Meter Rules that did not exist and which they did not commit.

88. At all relevant times, Defendants represented that the Notices of Violation issued to Plaintiffs and Class members alleged valid and/or current violations of the Muni Meter Rules.

89.     At all relevant times, Defendants were aware that the issued Notices of Violation to Plaintiffs and Class members alleged violations of the Muni Meter Rules that did not exist and which they did not commit.

90.     Defendants engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading, and with the intent that Plaintiffs and Class members rely upon such concealment, suppression and omissions.

91.     Alternatively, Defendants were reckless in not knowing that these representations were false and misleading at the time they were made.

92.     Plaintiffs and Class members reasonably relied upon Defendants' omissions and misrepresentations. As a direct and proximate result of Defendants' actions, Plaintiffs and Class members have sustained economic injury by paying fines and/or associated fees for violations that did not exist and which they did not commit.

93.     In the event that Plaintiffs and Class members violated Section 4-08(h)(1) of the Muni Meter Rules, Defendants failed to notify Plaintiffs and Class members that they were accused of violating Section 4-08(h)(1). Defendants collected fines for these alleged violations from Plaintiffs and Class members and caused them to incur associated fees, depriving them of their property without due process in violation of the Constitution and laws of the United States.

94.     As a result of Defendants' actions, Plaintiffs and Class members are entitled to legal and equitable relief, including damages, pre-judgement and post-judgement interest, costs, attorneys' fees and/or other relief as deemed appropriate.

## COUNT II
### DEPRIVATION OF DUE PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

95.     Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

96.     Plaintiffs and Class members are persons within the meaning of the Fourteenth

Amendment to the United States Constitution.

97.    Plaintiffs and Class members are citizens of the United States.

98.    Defendants issued Notices of Violation to Plaintiffs and Class members alleging violations of the Muni Meter Rules that did not exist and which they did not commit.

99.    Defendants collected payment of fines from Plaintiffs and Class members for violations of the Muni Meter Rules that did not exist and which they did not commit.

100.    Defendants caused Plaintiffs and Class members to incur associated fees for violations of the Muni Meter Rules that did not exist and which they did not commit.

101.    At all relevant times, Defendants represented that the Notices of Violation issued to Plaintiffs and Class members alleged valid and/or current violations of the Muni Meter Rules.

102.    At all relevant times, Defendants were aware that the issued Notices of Violation to Plaintiffs and Class members alleged violations of the Muni Meter Rules that did not exist and which they did not commit.

103.    Defendants engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading, and with the intent that Plaintiffs and Class members rely upon such concealment, suppression and omissions.

104.    Alternatively, Defendants were reckless in not knowing that these representations were false and misleading at the time they were made.

105.    Plaintiffs and Class members reasonably relied upon Defendants' omissions and misrepresentations. As a direct and proximate result of Defendants' actions, Plaintiffs and Class members have sustained economic injury by paying fines and/or associated fees for violations that did not exist and which they did not commit.

106.    In the event that Plaintiffs and Class members violated Section 4-08(h)(1) of the Muni Meter Rules, Defendants failed to notify Plaintiffs and Class members that they were

accused of violating Section 4-08(h)(1). Defendants collected fines for these alleged violations from Plaintiffs and Class members and caused them to incur associated fees, depriving them of their property without due process in violation of the Constitution and laws of the United States.

107.    As a result of Defendants' actions, Plaintiffs and Class members are entitled to legal and equitable relief, including damages, pre-judgement and post-judgement interest, costs, attorneys' fees and/or other relief as deemed appropriate.

**COUNT III**
**DEPRIVATION OF DUE PROCESS IN VIOLATION OF ARTICLE 1, SECTION 6, OF THE NEW YORK STATE CONSTITUTION**

108.    Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

109.    Plaintiffs and Class members are persons within the meaning of Article 1, Section 6, of the New York State Constitution.

110.    Plaintiffs and Class members are citizens of the United States.

111.    Defendants issued Notices of Violation to Plaintiffs and Class members alleging violations of the Muni Meter Rules that did not exist and which they did not commit.

112.    Defendants collected payment of fines from Plaintiffs and Class members for violations of the Muni Meter Rules that did not exist and which they did not commit.

113.    Defendants caused Plaintiffs and Class members to incur associated fees for violations of the Muni Meter Rules that did not exist and which they did not commit.

114.    At all relevant times, Defendants represented that the Notices of Violation issued to Plaintiffs and Class members alleged valid and/or current violations of the Muni Meter Rules.

115.    At all relevant times, Defendants were aware that the issued Notices of Violation to Plaintiffs and Class members alleged violations of the Muni Meter Rules that did not exist and which they did not commit.

116.    Defendants engaged in the above-described actionable statements, omissions and

concealments with knowledge that the representations were false and/or misleading, and with the intent that Plaintiffs and Class members rely upon such concealment, suppression and omissions.

117.    Alternatively, Defendants were reckless in not knowing that these representations were false and misleading at the time they were made.

118.    Plaintiffs and Class members reasonably relied upon Defendants' omissions and misrepresentations. As a direct and proximate result of Defendants' actions, Plaintiffs and Class members have sustained economic injury by paying fines and/or associated fees for violations that did not exist and which they did not commit.

119.    In the event that Plaintiffs and Class members violated Section 4-08(h)(1) of the Muni Meter Rules, Defendants failed to notify Plaintiffs and Class members that they were accused of violating Section 4-08(h)(1). Defendants collected fines for these alleged violations from Plaintiffs and Class members and caused them to incur associated fees, depriving them of their property without due process in violation of the Constitution and laws of the United States.

120.    As a result of Defendants' actions, Plaintiffs and Class members are entitled to legal and equitable relief, including damages, pre-judgement and post-judgement interest, costs, attorneys' fees and/or other relief as deemed appropriate.

## COUNT IV
## FRAUDULENT CONCEALMENT / FRAUDULENT INDUCEMENT

121.    Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

122.    Defendants issued Notices of Violation to Plaintiffs and Class members alleging violations of the Muni Meter Rules that did not exist and which they did not commit.

123.    Defendants collected payment of fines from Plaintiffs and Class members for violations of the Muni Meter Rules that did not exist and which they did not commit.

124.    Defendants caused Plaintiffs and Class members to incur associated fees for

violations of the Muni Meter Rules that did not exist and which they did not commit.

125. At all relevant times, Defendants falsely represented that the Notices of Violation issued to Plaintiffs and Class members alleged valid and/or current violations of the Muni Meter Rules.

126. At all relevant times, Defendants were aware that the issued Notices of Violation to Plaintiffs and Class members alleged violations of the Muni Meter Rules that did not exist and which they did not commit.

127. Defendants engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading, and with the intent that Plaintiffs and Class members rely upon such concealment, suppression and omissions.

128. Defendants had a duty to inform Plaintiffs and Class members that Section 4-08(h)(10) of the Muni Meter Rules was repealed on April 20, 2017, and that Notices of Violation subsequently issued for this violation were invalid.

129. That Section 4-08(h)(10) of the Muni Meter Rules was repealed and that Notices of Violation issued for this violation on or after April 20, 2017, were invalid is material information that Defendants had a duty to disclose to those remitting payment and/or associated fees for violations of Section 4-08(h)(10).

130. Defendants, with the intent that individuals rely thereupon, including Plaintiffs and Class members, continued to issue Notices of Violation alleging violations of the Muni Meter Rules that did not exist and which individuals did not commit, causing individuals, including Plaintiffs and Class members, to remit payment and associated fees for violations that did not exist and which they did not commit.

131. Plaintiffs and Class members reasonably relied upon Defendants' omissions and misrepresentations. As a direct and proximate result of Defendants' actions, Plaintiffs and Class

members have sustained economic injury by paying fines and/or associated fees for violations that did not exist and which they did not commit.

132.     As a result of Defendants' actions, Plaintiffs and Class members are entitled to legal and equitable relief, including damages, pre-judgement and post-judgement interest, costs, attorneys' fees and/or other relief as deemed appropriate.

<u>COUNT V</u>
**NEGLIGENT MISREPRESENTATION**

133.     Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

134.     Defendants issued Notices of Violation to Plaintiffs and Class members alleging violations of the Muni Meter Rules that did not exist and which they did not commit.

135.     Defendants collected payment of fines from Plaintiffs and Class members for violations of the Muni Meter Rules that did not exist and which they did not commit.

136.     Defendants caused Plaintiffs and Class members to incur associated fees for violations of the Muni Meter Rules that did not exist and which they did not commit.

137.     At all relevant times, Defendants represented that the Notices of Violation issued to Plaintiffs and Class members alleged valid and/or current violations of the Muni Meter Rules.

138.     Defendants had a duty to inform Plaintiffs and Class members that Section 4-08(h)(10) of the Muni Meter Rules was repealed on April 20, 2017, and that Notices of Violation subsequently issued for this violation were invalid.

139.     That Section 4-08(h)(10) of the Muni Meter Rules was repealed and that Notices of Violation issued for this violation on or after April 20, 2017, were invalid is material information that Defendants had a duty to disclose to those remitting payment and/or associated fees for violations of Section 4-08(h)(10).

140.     At the time Defendants made their representations that the Notices of Violation

issued to Plaintiffs and Class members alleged valid and/or current violations of the Muni Meter Rules, Defendants knew or should have known that these representations were false or that Defendants made them without knowledge of their truth or veracity.

141.    Having negligently misrepresented and/or negligently omitted these material facts, Defendants have issued Notices of Violation alleging violations of the Muni Meter Rules that did not exist and which Plaintiffs and Class members did not commit.

142.    Based upon Defendants' negligent misrepresentations or concealment of these material facts, Defendants induced individuals, including Plaintiffs and Class members, to rely upon Defendants' omissions and misrepresentation and to remit payment and associated fees for violations that did not exist and which they did not commit.

143.    Plaintiffs and Class members reasonably relied upon Defendants' omissions and misrepresentations. As a direct and proximate result of Defendants' actions, Plaintiffs and Class members have sustained economic injury by paying fines and/or associated fees for violations that did not exist and which they did not commit.

144.    As a result of Defendants' actions, Plaintiffs and Class members are entitled to legal and equitable relief, including damages, pre-judgement and post-judgement interest, costs, attorneys' fees and/or other relief as deemed appropriate.

**COUNT VI**
**UNJUST ENRICHMENT**

145.    Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

146.    Plaintiffs and Class members have conferred substantial benefits on Defendants by paying for violations of the Muni Meter Rules that did not exist and which they did not commit. Defendants have knowingly and willingly accepted and enjoyed these benefits. Defendants continue to knowingly and willingly enjoy these benefits.

147. Defendants knew or should have known that the payments tendered by Plaintiffs and the Class members were given and received with the expectation that the Notices of Violation issued to Plaintiffs and Class members alleged valid and/or current violations of the Muni Meter Rules. For Defendants to retain the benefit of the payments under these circumstances is inequitable.

148. Defendants unlawfully retained money belonging to Plaintiffs and Class members.

149. Defendants have been unjustly enriched through their retention of money belonging to Plaintiffs and Class members.

150. Plaintiffs and Class members are entitled to restitution as it is unjust and inequitable for Defendants to retain such money based on the unlawful conduct described above. Such money belongs in good conscience to Plaintiffs and Class members.

151. As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and Class members are entitled to restitution from and institution of a constructive trust disgorging all profits, benefits and other compensation obtained by Defendants through this inequitable conduct.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request relief against Defendants as set forth below:

    a.   An award of damages, including actual, general, special, incidental, statutory, punitive, treble and consequential, in an amount to be determined at trial;

    b.   Notice to the Class of this action;

    c.   An injunction against Defendants prohibiting Defendants from continued unlawful practices, policies and patterns set forth herein;

    d.   Appoint Plaintiffs as the representatives of the Class and their counsel as Class

counsel;

e. Pre-judgment and post-judgment interest as provided by law;

f. Reasonable attorneys' fees and costs; and

g. Such other and further relief that this Court deems appropriate.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues so triable.

Dated: New York, New York
February 1, 2018

Respectfully Submitted,

IMBESI LAW P.C.

/s/ *Israel Klein*
Israel Klein, Esq.
Brittany Weiner, Esq.
450 Seventh Avenue, Suite 1408
New York, New York 10123
Tel. (646) 767-2265
Fax. (212) 658-9177
Israel@lawicm.com