D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JACOB STERN and BRACHA STERN,

                Plaintiffs,

-against-

THE CITY OF NEW YORK, COMMISSIONER
POLLY TROTTENBERG, COMMISSIONER
JACQUES JIHA, DEPUTY COMMISSIONER
JEFFREY SHEAR, and COMMISSIONER
JAMES O'NEILL,

                Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**17-CV-4973 (NGG) (JO)**

NICHOLAS G. GARAUFIS, United States District Judge.

This is a 42 U.S.C. § 1983 case brought by Plaintiffs Jacob Stern and Bracha Stern as a putative class action against the City of New York (the "City") and Commissioner Polly Trottenberg, Commissioner Jacques Jiha, Deputy Commissioner Jeffrey Shear, and Commissioner James O'Neill (collectively, the "Individual Defendants"). (Am. Compl. (Dkt. 17).) Plaintiffs contend that parking tickets issued by the NYPD to Plaintiffs and others cited non-existent provisions of local code, rendering them invalid. (Id.) Defendants have moved to dismiss the case pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Mot. to Dismiss ("Mot.") (Dkt. 22); Mem. in Supp. of Mot. to Dismiss ("Mem") (Dkt. 25) at 1.)

For the following reasons, Defendants' motion to dismiss is GRANTED. The court bases its determination on Rule 12(b)(1), and therefore does not address Defendants' arguments under Rule 12(b)(6).

I.  BACKGROUND

   A.  Facts

The court largely takes the following statement of facts from Plaintiffs' amended complaint, the well-pleaded allegations of which the court generally accepts as true for purposes of Defendants' motion to dismiss. N.Y. Pet Welfare Ass'n v. City of New York, 850 F.3d 79, 86 (2d Cir. 2017). The court draws all reasonable inferences in Plaintiffs' favor. Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014). The court also considers facts from declarations submitted by Defendants. See id. ("Where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." (citations and quotation marks omitted)). "However, the [c]ourt will not consider 'conclusory or hearsay statements contained [therein].'" Id. (quoting J.S. ex rel. N.S., 386 F.3d at 110) (citing Homefront Org., Inc. v. Motz, 570 F. Supp. 2d 398, 404 (E.D.N.Y. 2008)).

The City uses a "Muni Meter Parking System" to "regulate and enforce approximately 85,000 paid public on-street parking spaces." (Am. Compl. ¶ 22.) Under that system, drivers in paid parking spaces use kiosks to pay for time in the spot and receive a receipt for that payment to be displayed on the vehicle's dashboard. (Id. ¶ 23.) Police officers who enforce these payments use handheld printing devices to issue Notices of Violation for infractions, and those devices are pre-programmed with sections of the applicable regulations (the "Muni Meter Rules") and corresponding statutes that then appear printed on the issued Notices of Violation. (Id. ¶¶ 24-25.)

Prior to April 20, 2017, the rules governing paid parking spaces were set forth in Section 4-08(h)(10) of the Muni Meter Rules. (Id. ¶ 30.) On April 20, 2017, the applicable rule was

revised and renumbered as Section 4-08(h)(1), and the previous section 4-08(h)(10) was struck. (Id. ¶ 31.) The new rule reflected the relevant provisions of Section 4-08(h)(10), and the changes merely clarified the previous rule and added new provisions to cover, inter alia, placement of tickets on motorcycles and payment by mobile devices. (Id.) However, Defendants continued to issue Notices of Violation citing stricken Section 4-08(h)(10) for paid parking space violations after April 20, 2017. (See id. ¶¶ 3, 36, 40, 54.)

On April 26, 2017, Plaintiff Jacob Stern ("Mr. Stern") parked a vehicle registered to his wife, Plaintiff Bracha Stern ("Ms. Stern"), in a paid public parking space. (Id. ¶ 33.) He purchased parking time from a Muni Meter and displayed the time-stamped Muni Meter receipt on the vehicle's dashboard. (Id.) A City police officer issued a Notice of Violation stating that the allotted parking time on the parking receipt had expired in violation of the Muni Meter Rules using his handheld printing device. (Id. ¶¶ 33-34.) When that police officer selected the applicable violation on his device, the device populated the Notice of Violation with the repealed Section 4-08(h)(10) instead of the correct Section 4-08(h)(1). (Id. ¶ 36.) On June 22, 2017, Mr. Stern paid the assessed $35 fine and a $10 late fee to the New York City Department of Finance (the "DOF") through its website. (Id. ¶ 38.) He also paid a 2.49% processing fee for paying with a credit card. (Id.)

On May 5, 2017, Mr. Stern again parked a vehicle registered to Ms. Stern in a paid public parking space. (Id. ¶ 39.) A New York City police officer issued another violation using a handheld printing device, this time stating that the vehicle's dashboard did not properly display a valid Muni Meter receipt. (Id. ¶¶ 39-40.) When that police officer selected the applicable violation on his device, the device populated the Notice of Violation with the repealed Section 4-08(h)(10) instead of Section 4-08(h)(1). (Id. ¶ 41.) When Mr. Stern returned to the vehicle, he

discovered the Notice of Violation on the vehicle's dashboard. (Id. ¶ 42.) On June 22, 2017, Mr. Stern paid the assessed $35 fine and a $10 late fee to the DOF through its website. (Id. ¶ 43.) He also paid a 2.49% processing fee for paying with a credit card. (Id.) Both Notices contained accurate descriptions of the alleged violations. (Id. ¶¶ 37, 42.)

Following the filing of the original complaint in this case on August 23, 2017, DOF "refunded or dismissed approximately 507,668 invalid Muni Meter tickets, totaling approximately $26 million." (Id. ¶¶ 45-46.) This refund process included a refund paid to Ms. Stern for the statutory fines and applicable late fees paid for the alleged violations at issue here. (Id. ¶ 47.) DOF did not refund the 2.49% processing fee Mr. Stern paid for remitting payment with a credit card, nor did it pay any interest on the money it refunded. (Id. ¶¶ 49-50.) The handheld devices have since been updated with the correct ordinance numbers. Decl. of Erik G. Worobey ("Worobey Decl.") (Dkt. 23) ¶ 2.)

### B. Procedural History

On July 10, 2017, Plaintiff Jacob Stern ("Mr. Stern") timely filed and served a Verified Notice of Claim against the City. (Id. ¶ 14.) On August 23, 2017, Mr. Stern filed a Complaint in this District against the City, the New York City Police Department ("NYPD"), the City of New York Parking Violations Bureau ("PVB"), the New York City Department of Finance ("DOF"), and the New York City Department of Transportation ("DOT"), asserting federal and state due process claims as well as a variety of state law tort claims. (Compl. (Dkt. 1).) These claims related to the issuance of two parking meter Notice of Violations that contained the incorrect rules numbers of the Muni Meter Rules relating to the applicable charges. (Id.)

On February 1, 2018, Plaintiffs filed their Amended Complaint. (Am. Compl.) Among other things, it added Ms. Stern as a plaintiff, added the Individual Defendants, and removed

4

NYPD, PVB, and DOF as defendants. (Id.) Plaintiffs bring causes of action under 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendments for deprivation of property in the form of the ticket payments (id. ¶¶ 70-105), as well as state law claims for deprivation of due process under the New York state constitution, fraudulent concealment, negligent misrepresentation, and unjust enrichment (id. ¶¶ 106-147). Plaintiff seeks both monetary and injunctive relief. (Id. at ECF pp.27-28.)

The court granted Defendants leave to move to dismiss the complaint, and the motion was fully briefed on May 15, 2018. (See Feb. 21, 2018 Order; Mot.; Worobey Decl.; Decl. of Jeffrey Shear (Dkt. 24); Mem.; Pl. Mem. in Opp'n to Mot. ("Opp'n") (Dkt. 26); Decl. of Israel Klein (Dkt. 27); Defs. Reply Mem. in Supp. of Mot. ("Reply") (Dkt. 28); Decl. of Karen B. Selvin (Dkt. 29).) Defendants contend that the court should dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Mem. at 1.)

## II. LEGAL STANDARD

A Rule 12(b)(1) motion tests the court's subject-matter jurisdiction to hear a claim or case. See Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), the court must dismiss a claim "when the . . . court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). When considering a motion under Rule 12(b)(1), the court "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." Tandon, 752 F.3d at 243. But "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists,'" id. (quoting Makarova, 201 F.3d at 113), and courts evaluating Rule 12(b)(1) motions may consider evidence outside the pleadings, see Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008).

5

## III. DISCUSSION

As explained below, Plaintiffs lack Article III standing to raise their § 1983 claim, and so the court lacks subject matter jurisdiction over that claim. See Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 198 (2d Cir. 2005) ("If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim.") Since that claim is the only of Plaintiffs' claims to arise under federal law, the court declines to exercise supplemental jurisdiction over the remainder of their claims.

### A. Plaintiffs' § 1983 Claim

The court must first determine whether Plaintiffs have standing to assert their sole federal claim, which arises under § 1983 and the Due Process clause of the Fourteenth Amendment.[1] Plaintiffs style their claim under the Fourteenth Amendment as a "due process" claim, and do not specify whether they are raising procedural or substantive due process claims. (Am. Compl. ¶¶ 95-107.) Plaintiffs' allegations in support of that claim, however, sound in the language of procedural due process (id. ¶ 106 ("Defendants failed to notify Plaintiffs . . . that they were accused of violating Section 4-08(h)(1) . . . , depriving them of their property without due

---

[1] The complaint purports to raise two federal claims: one arising under § 1983 (Count I) (Am. Compl. ¶¶ 82-94), and one arising under the Fourteenth Amendment (Count II) (Id. ¶¶ 95-107.) The court construes Plaintiffs' complaint as asserting a single federal claim under § 1983: that Defendants, acting under color of state law, violated Plaintiffs' right to procedural due process. See Fenner v. City of New York, 392 F. App'x 892, 893 (2d Cir. 2010) (summary order) ("When 42 U.S.C. § 1983 provides a remedy, an implied cause of action grounded on the Constitution is not available." (quoting Pauk v. Bd. of Trustees of City Univ. of New York, 654 F.2d 856, 865 (2d Cir. 1981) (alteration adopted)); Hughes v. Bedsole, 48 F.3d 1376, 1383 n.6 (4th Cir. 1995) ("[The plaintiff] cannot bring a claim directly under the Fourteenth Amendment because it does not create a cause of action. Her claim under the Fourteenth Amendment merges into her § 1983 claim because § 1983 merely creates a statutory basis to receive a remedy for the deprivation of a constitutional right."); cf. Turpin v. Mailet, 591 F.2d 426, 427 (2d Cir. 1979) (per curiam) ("[T]here is no place for a cause of action against a municipality directly under the 14th Amendment, because the plaintiff may proceed against the [municipality] under § 1983.").

process in violation of the Constitution.") (emphasis added)), and so the court has construed the claim as arising under procedural due process.

"Standing is 'the threshold question in every federal case, determining the power of the court to entertain the suit.'" Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (quoting Denney v. Deutsche Bank AG, 443 F.3d 253, 263 (2d Cir. 2006)). "Because the judicial power of the United States extends only to the resolution of cases and controversies, courts have always required that a litigant have 'standing' to challenge the action sought to be adjudicated." Jackson-Bey v. Hanslmaier, 115 F.3d 1091, 1095 (2d Cir. 1997) (citations omitted). In order to establish standing, Plaintiffs must "show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." Knife Rights, Inc. v. Vance, 802 F.3d 377, 383 (2d Cir. 2015) (citations and internal quotation marks omitted). "[T]he standing inquiry requires careful judicial examination of . . . whether the particular plaintiff is entitled to an adjudication of the particular claims asserted," Allen v. Wright, 468 U.S. 737, 752 (1980), abrogated on other grounds by, Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014), and "a plaintiff must demonstrate standing for each claim and form of relief sought," Baur v. Veneman, 352 F.3d 625, 642 n.15 (2d Cir. 2003). Plaintiffs bear "the burden of alleging sufficient facts to support standing." Jackson-Bey, 115 F.3d at 1095. Plaintiffs have standing to bring a procedural due process claim only if they have suffered "actual or threatened injury" as a result of the allegedly inadequate process. Brody v. Vill. of Port Chester, 261 F.3d 288, 290 (2d Cir.

2001) ("Brody II"). Plaintiffs here lack standing because they have failed to allege any facts showing a causal connection between any injury and the allegedly inadequate process.[2]

In Brody II, the Second Circuit reversed the district court's decision to preliminarily enjoin condemnation of the plaintiff's property because the plaintiff had not pleaded facts sufficient to establish standing for his procedural due process claim arising from that condemnation proceeding. See 261 F.3d at 289-90. There, the plaintiff attended one hearing regarding the condemnation of his property, but alleged that he had not received notice about a second hearing, which he had therefore not attended. Id. at 290. However, his comments from the first hearing were read at the second one and he did not "in any way indicate[] that he would have raised additional objections at the [second] hearing had he been provided with notice." Id. The court concluded, therefore, that he had not suffered an injury <u>as a result</u> of his not knowing about the second hearing. In other words, because he did not claim that a different process would have changed his approach to the underlying substantive issue, he had not shown any injury arising from the allegedly inadequate process provided. In a 2003 ruling regarding the same case, the Second Circuit expanded upon this holding:

> Although we believe it was . . . theoretically possible for Brody to allege an injury arising out of the failure to receive notice of the [second] meeting, he nevertheless still has not done so. Brody has not alleged what he would have said or responded to had he attended the [second] meeting; indeed, he has not alleged that he would have said anything at all at the [second] meeting.

Brody v. Vill. of Port Chester, 345 F.3d 103, 111 (2d Cir. 2003) (Sotomayor, J.) ("Brody IV"). Mr. Brody did, however, have standing to challenge notice regarding a published determination from those hearings because "he stated in his declaration that he wished to challenge [a finding]

---

[2] Defendants attack Mr. Stern's standing, but not Ms. Stern's standing. However, "[b]ecause the standing issue goes to . . . subject matter jurisdiction, it can be raised <u>sua sponte</u>." Central States Southeast, 433 F.3d at 198. The court thus examines standing as to both Plaintiffs.

8

but was denied the opportunity to do so" as a result of the allegedly inadequate notice. Brody v. Vill. of Port Chester, 434 F.3d 121, 126 (2d Cir. 2005) ("Brody V") (citing Brody IV, 345 F.3d at 111-12).

The difference between the two elucidates a general principle: plaintiffs have standing to assert a procedural due process claim resting on inadequate notice where they allege they would have somehow availed themselves of the process if they had received adequate notice. Of course, the court does not deny that "the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions." Carey v. Piphus, 435 U.S. 247, 266 (1978). The standing inquiry merely requires that plaintiffs raise, or allege that they would have raised, some substantive assertion, whether meritorious or otherwise.

And Plaintiffs here have not done so. Indeed, they have failed to allege any facts indicating a causal connection between their injuries and the allegedly inadequate notice.[3] The complaint acknowledges that, although the Notices of Violation Mr. Stern received contained the incorrect violation number, they accurately described the alleged violations. (Am. Compl. ¶¶ 37, 42.) It does not allege that Plaintiffs did not receive notice of the option to plead not guilty, nor that Plaintiffs would have pleaded not guilty and requested a hearing if they had been notified of the correct ordinance numbers. Further, Plaintiffs do not allege that they attempted to look up the ordinances using the incorrect number as given, or that their receipt of the Notice containing the incorrect ordinance number affected their behavior or their payment of the associated fines in any way. In short, they do not explain how providing the correct ordinance number on the Notices of Violation would have made any difference in their decision to plead guilty to the

---

[3] Plaintiffs' conclusory assertion that "[a]s a direct and proximate result of Defendants' actions, Plaintiffs . . . have sustained economic injury by paying fines and/or associated fees" (Am. Comp. ¶ 118), cannot, standing alone, meet Plaintiffs' burden to allege some fact showing that the alleged lack of process caused them to suffer some injury.

violations as described and to pay the resulting fines. Thus, as in Brody II, Plaintiffs have not "in any way indicated" that they "would have raised . . . objections"—or, indeed, changed their behavior in any way—"had [they] been provided with notice." Id. at 261 F.3d at 290. They have not alleged facts showing any injury arising from the allegedly inadequate notice, and so do not have standing to raise their § 1983 claim.

### B. Plaintiffs' State Law Claims

Having determined that Plaintiffs lack standing to assert their sole federal claim, the court sees no reason to retain jurisdiction over state-law claims at this early stage in the litigation. The court therefore declines to exercise supplemental jurisdiction over Plaintiff's remaining claims. See 28 U.S.C. § 1367(c)(3); see also In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 61 (2d Cir. 1998) (per curiam) ([W]hen the federal claims are dismissed the state claims should be dismissed as well." (citations and quotation marks omitted)).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 22) is GRANTED in full. The Clerk of Court is respectfully DIRECTED to enter judgment and close the case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
March 25, 2019

NICHOLAS G. GARAUFIS
United States District Judge